IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GAIL WARD | * | |
| v. | * | Civil Action No. CCB-16-3606 |
| THE COLUMBIA BANK and JEFFREY McMARRON | * | |
| | * | |
| | *** | |

**Memorandum**

The plaintiff, Gail Ward, has sued the defendants, The Columbia Bank and Jeffrey McMarron, under the Age Discrimination in Employment Act, ("ADEA"), and the Family and Medical Leave Act, ("FMLA"), for terminating her employment when her manager position was eliminated without considering her for a position as assistant manager.[1] The defendants have filed a motion for summary judgment. For the reasons stated below, the motion will be denied in part and granted in part.

**Background**

Gail Ward was 67 years old when she was fired from the Columbia Bank ("the Bank"). (Compl. ¶ 62). Ward had been hired by the Harpers Choice branch of the Bank in 1999 as an Assistant Branch Manager. (Defs.' Mot., Ex. A, Ward Depo., p. 49). Five years later, Ward was promoted to Branch Manager, (*Id.* at p. 48), a role that made Ward responsible for branch staff, scheduling, developing sales and business, loan processing, security, and regulatory compliance. (*Id.* at p. 83). She also was responsible for meeting annual goals. (*Id.* at p. 93). From 2010 to

---

[1] Ward does not challenge the branch reorganization that led to the elimination of her position, just the bank's failure to consider her for a newly created one.

1

2013, Ward was given a rating of "Consistently Achieves Expectations."[2]

Over time, in some part due to new ownership of the Bank, these annual goals became more ambitious. (*Id.* at p. 58). Ward's strong performance record began to falter. Over the course of three years, beginning in 2012, Ward's branch failed to meet one or more of these goals. (*Id.* at pp.155-56). Ward accepts the branch's unfavorable business record but not the responsibility for it. In her view, and the view of some of her co-workers, an anemic customer base, caused by the growth of online banking and the poor financial position of many members of the branch's community, was to blame for the branch's failure to meet performance expectations. (*Id.* at pp. 138-39, 170, 176, 187). Nevertheless, Jeffrey McMarron reduced Ward's rating to Meets Most Expectations ("MME") in her 2014 performance review, noting, among other things, Ward's failure to meet performance goals. (*Id.* at pp. 186-90).

While Ward was struggling to meet her performance goals, Bank management developed plans to consolidate the Harpers branch with another branch nearby. (Defs.' Mot., Ex. C, pp. 32-35). Lou Giustini, Regional President, and Mark Mullican, President of the Bank, agreed that one of the two managers at those branches would be fired, because the consolidated bank would not need two managers. To facilitate the transition, the Bank decided to replace the manager position at Harpers Choice with a less costly assistant manager position. Ward was not offered, or considered for, the position, (*Id.* at p. 38), but three others were: Doreen Francis (57 years old), Tasha Stevens (29 years old), and Desirae Williams (35 years old). Giustini selected Ms. Williams. (Defs.' Mot., Ex. T). According to the defendants, Ward's unsatisfactory job performance during previous years, particularly her 2014 review, was the reason she was not considered. (Defs.' Mot., Ex. C. p. 45).

---

[2] The Bank rates its employees on a six-level scale: Exemplary (E), Frequently Exceeds Expectations (FEE), Consistently Achieves Expectations (CAE), Meets Most Expectations (MME), Meets Some Expectations (MSE), and Does Not Meet Expectations (DNM). (Pl.'s Opp., Exs. 1-5).

A series of emails sent after the decision to fire Ward, however, could be read to undermine that explanation. After McCarron emailed members of the Bank's human resources department asking for guidance on firing Ms. Ward, an HR representatives responded, "I'm hoping there is enough in the eval and on file to ensure we can make this elimination and not have to give her the new assistant manager] position." (Pl.'s Opp., Ex. 14). A series of emails between HR reps followed, as they tried to justify not offering the assistant manager position to Ward. (Pl.'s Opp., Exs. 14, 16).

Ward's use of leave under the FMLA also appears to have affected the Bank's employment decisions. Ward requested FMLA leave twice. She first requested and was granted five weeks of leave in 2014. While Ward was away, McCarron apparently expressed doubt that Ward's medical issues were serious enough to justify her request. (Pl.'s Opp., Ex. 7 at 113-14). McCarron's review of Ward's performance in 2014 noted her "considerable amount of time" off as one of the factors contributing to her receiving a lower rating than the previous three years. Ward requested leave again in April 2015 for knee surgery, although she hesitated to give the Bank a reason for her request for fear that doing so would negatively affect her employment after her leave in 2014 was reflected on her performance review. The parties dispute whether Ward's 2015 request for leave was approved before she was fired.

Ward filed a complaint against Columbia Bank and Jeffrey McMarron. She claims that she was fired without being considered for the newly created assistant manager position because of her age and her 2014 request for leave. She also claims that the defendants interfered with her rights under the FMLA by firing her after her 2015 request and by causing her to request less leave than she otherwise would have.

## Standard of Review

Summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## Analysis

Ward asserts three related claims against the Bank and McCarron. She first claims that she was passed over for the assistant manager position because of age discrimination. She also claims that the defendants interfered with her rights under the FMLA and retaliated against her when she did exercise those rights. Because there are genuine disputes of material fact as to Ward's age discrimination and FMLA retaliation claims, but not as to her FMLA interference claim, the defendants' motion for summary judgment will be denied in part and granted in part.

I. Age Discrimination

The Age Discrimination in Employment Act, ("ADEA"), makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623.

A plaintiff may prove her age discrimination claim through the familiar *McDonnell Douglas* framework. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310-11 (1996)(assuming that the *McDonnell Douglas* framework applies to age discrimination cases); *see also Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). If Ward presents a *prima facie* case for age discrimination, the defendants may respond by presenting a legitimate non-discriminatory reason for the adverse employment action of which she complains. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Ward must then show that the legitimate reason offered by the defendants is a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Ultimately, Ward must show that age discrimination was the 'but for' cause of her termination. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009).

A. Prima Facie Case

To state a *prima facie* case for age discrimination, Ward must show that "(1) [s]he is a member of the protected class; (2) [s]he was qualified for the job and met [her employer's] legitimate expectations; (3) [s]he was discharged despite her qualifications and performance; and (4) following h[er] discharge, [s]he was replaced by a substantially younger individual with comparable qualifications." *Warch*, 435 F.3d at 513.

The defendants concede that Ward is a member of a protected class and that she was

5

discharged from her position but they insist Ward was unable to meet the Bank's legitimate expectations and that her replacement was more qualified than she was.

### i. Legitimate Expectations and Qualifications

Ward concedes that she failed to meet the Bank's expectations but presses her claim nevertheless because those expectations, and therefore her resulting poor performance review, were not "legitimate" but rather a pretext for discrimination. An employer's expectations are not legitimate if they are a "sham designed to hide the employer's discriminatory purpose." *See Warch*, 435 F.3d at 518.

Ward genuinely disputes the legitimacy of the Bank's expectations by arguing that they set unrealistic goals for a branch whose clientele was suffering economically, converting to online banking, and eschewing new loans. McCarron and Giustini recognized as much, (Pl.'s Opp., Ex. 6 at 177-78), as did Ward's coworkers, (*see, e.g.*, Pl.'s Opp. Ex. 7 at 32; Ex. 8 at 38, 43). The defendants' recognition of the obstacles facing Ward's branch, and the several years for which the branch's failure to meet performance goals did not negatively affect Ward's performance reviews, puts the legitimacy of those expectations in doubt. The parties concede that Ward had not been meeting the Bank's expectations for several years, but it was only in 2014 that her failure was documented in a performance review. This inconsistency casts the Bank's performance benchmarks as little more than aspirational goals, and, if expectations, ones for which the Bank provided allowances based on the difficulties facing Ward's branch. In either case, the emphasis on Ward's failure to meet these performance goals in 2014, viewed in the light most favorable to Ward, could be reasonably interpreted as a disguise for a discriminatory purpose not to offer Ward the position of assistant manager. (*See* Defs.' Mot., Ex. C at pp. 35-45).

Further, the record also shows that the first year Ward received an unfavorable performance review, her report blamed her poor performance on her taking FMLA leave. To the extent the defendants' determination that Ward was not meeting expectations was based on her statutory right to take leave, it is also illegitimate. This conclusion also undermines the defendants' contention that Ward cannot prove the fourth element of the *prima facie* case because her replacement was more qualified. Ward's supposed poor performance was directly related to what a reasonable juror might determine were not legitimate expectations and an unlawful reliance on Ward's use of FMLA leave.

B. Pretext

The defendants offer legitimate non-discriminatory reasons for their actions, explaining that their decision not to consider Ward for the assistant manager position was based on Ward's poor performance review and numbers. Therefore, Ward must provide evidence that the defendants' reasons are "unworthy of credence." *Burdine*, 450 U.S. at 256. As the Supreme Court has explained, an inference "from the falsity of [an] explanation that the employer is dissembling to cover up a discriminatory purpose is . . . consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (internal quotation marks omitted). In other words, depending on the evidence presented, "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id*.

Ward raises a genuine dispute as to the validity of the Bank's explanation. She undermines the assertion that her poor performance kept her from the assistant manager position by describing a series of emails between McCarron and HR representatives that portray a poorly

7

justified decision to exclude Ward from the job and a post hoc effort to sustain that decision with legitimate justifications. Whether that evidence, combined with the selection of another candidate substantially younger than Ward, will be sufficient to persuade a jury to conclude that age discrimination was the reason for Ward's non-selection, is not for the court to decide on summary judgment.

Although these emails may admit of more than one reasonable, even non-discriminatory explanation, ambiguity created by competing reasonable interpretations of evidence does not support a grant of summary judgment. Here, Ward genuinely disputes the reasons the defendants offer for her adverse employment action with evidence from which a reasonable juror could decide in her favor.

### C. Causation

Finally, Ward must prove that age discrimination was the but for "cause of the employer's adverse decision." *Gross*, 557 U.S. at 176. For the reasons stated above, Ward has raised a genuine dispute of fact that the reason she was not considered for the newly created assistant manager position was her age.

## II. FMLA

Next, Ward claims that the defendants violated the Family and Medical Leave Act by interfering with, and retaliating for, Ward's exercise of her rights under the Act. The defendants dispute these allegations and also argue that McCarron cannot be held individually liable under the Act.

### A. Individual Liability

The FMLA expressly applies to "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. §

8

2611(4)(A)(ii)(I). This language has been read to create individual liability for private sector employees so long as the employee exerts meaningful "control over the plaintiff's FMLA rights." *See Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 598 (D. Md. 2013).[3]

Although McCarron had substantial control over Ward's employment prospects, the record shows that he did not control whether Ward would receive FMLA leave. (Defs.' Mot., Ex. P, No. 7). Indeed, Ward only provides evidence that McCarron controlled paid time off, an independent system of leave. Accordingly, even assuming without deciding that *Caire* is correct, the defendants' motion for summary judgment on Ward's FMLA claims as applied to McCarron will be granted.

    B. Retaliation

Ward claims that the Bank retaliated against her for her use of leave under the Family and Medical Leave Act. The FMLA entitles employees to 12 work weeks of leave every year to treat or recover from health issues. 29 U.S.C. § 2612(a)(1). The Act also grants a right to employees "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "an equivalent position with equivalent benefits, pay, and other terms and conditions of employment," 29 U.S.C. § 2614(a)(1)(A)-(B), and prevents employers from retaliating against employees by making it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter," 29 U.S.C. § 2615(a)(2). Retaliation claims arising from an exercise of rights under the FMLA "are analyzed under the burden-shifting framework of" *McDonnell Douglas*. *Yashenko v. Harrah's NC Casino Co., LLC.*, 446 F.3d 541, 550-51 (4th Cir. 2006).

Ward must establish three elements to make out a *prima facie* case of retaliation: she

---

[3] The Fourth Circuit has not decided whether the FMLA imposes individual liability. *See Jones v. Sternheimer*, 387 Fed. Appx. 366, 368 (4th Cir. July 6, 2010).

must prove that (1) she engaged in a protected activity (using FMLA leave); (2) she suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action. *Id.* at 551.

Although they concede the first and second elements of the case, the defendants assert that Ward cannot provide a causal link between her use of FMLA leave in 2014 and her firing without being considered for the assistant manager position because Giustini did not know about Ward's time off. He testified that he only reviewed Ward's score, and not the attached comments, when he signed the 2014 review, and did not review her performance evaluations when he excluded her from consideration for the assistant manager position.

The defendants' arguments are insufficient to support summary judgment. It is undisputed that Ward received a negative performance review in 2014 for her failure to meet performance goals and that the 2014 review contributed to the Bank's decision not to consider her for the assistant manager position. But it is also undisputed that Ward's use of FMLA leave that year affected her score; the review expressly notes that Ward's "considerable" amount of time off "impacted her overall results." This, after McCarron expressed incredulity that Ward truly needed five weeks of leave. If Ward's FMLA leave led to her poor performance review in 2014, and that review formed the grounds for her exclusion from the assistant manager position, then Ward did not get the job, at least in part, because she exercised a statutory right to seek medical leave.

Giustini insists that he did not look at Ward's performance before removing her from the short list for the assistant manager position, and therefore McCarron's remark about Ward's leave could not have affected his employment decisions. (Pl.'s Opp. Ex. 11 at 59). But the defendants also insist that Giustini's decision was motivated not by age discrimination but by an

10

overall review of Ward's performance, which would have reflected McCarron's negative treatment of Ward's use of leave. The record also indicates that even if Giustini did not review Ward's files, McCarron may have informed him of Ward's use of FMLA leave. (Pl.'s Opp. Ex. 12 at 161-62). In other words, the record shows that Giustini's decision to exclude Ward from the assistant manager position may have been indirectly or directly influenced by Ward's use of FMLA leave. On these facts, a reasonable juror could find a causal link between Ward's protected activity and the adverse employment action she suffered. These facts also are sufficient to raise a genuine dispute that the defendants' proffered legitimate reasons are pretext for discrimination.

### C. FMLA Interference

Finally, Ward claims that the defendants interfered with her FMLA rights. To establish an FMLA interference claim a plaintiff must show that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel County Public Schools*, 789 F.3d 422, 427 (4th Cir. 2015). Refusing FMLA leave constitutes interference, but so does "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). FMLA interference claims exist "to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions." *Adams*, 789 F.3d at 427. "[A]n employer can avoid liability under the FMLA if it can prove that it would not have retained an employee had the employee not been on FMLA leave." *Yashenko*, 446 F.3d at 547 (internal quotation marks omitted).

Ward has not provided enough evidence to genuinely dispute the Bank's argument that it did not interfere with her rights under the FMLA in 2015. As stated in detail above, McCarron

11

was frustrated by Ward's time off, complaining to her co-workers about the length of her leave and noting her leave on the first poor performance review she received as a manager. Ward took note. When Ward required additional time off for knee surgery in 2015, she did not immediately reveal that she needed leave for surgery for fear of professional consequences, (Pl.'s Opp., Ex. 6 at pp. 198-201), and, although she eventually did tell her supervisors that she was having surgery, Ward claims that she would have taken additional time off but for the defendants' alleged interference.

Even assuming that Ward has raised a genuine dispute on those issues, she cannot defeat the defendants' motion: she has not shown that she was prejudiced, because the defendants had planned to eliminate her position before she requested FMLA leave. *See Yashenko*, 446 F.3d at 550 (granting summary judgment, in part, because the defendant's decision to fire the plaintiff in a reorganization came before the plaintiff's request for leave). Critical to the Fourth Circuit's decision in *Yashenko* was an undisputed record showing that the defendant had considered a "reorganization that would eliminate" the plaintiff's position before the plaintiff had even requested leave. *Id.* Here, no matter if Ward requested FMLA leave in March or April of 2015, (Pl.'s Opp., Ex. 6 at 199, 212-13), the defendants had decided to eliminate Ward's position earlier, (Defs.' Mot., Ex. C, pp. 32-35). On that timeline, a reasonable juror could not decide that the defendants interfered with Ward's FMLA leave by deciding to fire her for the simple reason that, at the time of their decision, the defendants had no idea she would request FMLA leave. Accordingly, the defendants' motion for summary judgment on this claim will be granted.

## Conclusion

For the reasons stated above, the court will grant in part and deny in part the defendants' motion for summary judgment. A separate order follows.

____Feb. 2, 2018____  _____/s/_____
      Date                                             Catherine C. Blake
                                                        United States District Judge